FILED by ___ TE ___ D.C.

ELECTRONIC

**May 29, 2014**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## 14-61247-CV-COHN/SELTZER

Donna Mae Fredericks, an individual

      Plaintiff.              Case No.

vs.

SHAPIRO, FISHMAN & GACHE, LLP,
and CITIMORTGAGE, INC.
      Defendants.

_____/

## <u>VERIFIED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF</u>
## <u>JURY TRIAL DEMANDED</u>

      COMES NOW, the Plaintiff, Donna Mae Fredericks, an individual, sues

SHAPIRO, FISHMAN & GACHE, LLP and CITIMORTGAGE, INC. and files this

Complaint for Damages and Incidental Relief against Defendants stating as follows:

### I. PRELIMINARY STATEMENT

1.     This is an action for damages brought for damages for violations of the Fair Debt

Collection Practices Act (FDCPA) 15 U.S.C. §169, *et seq*.; and for damages for

violations of the Florida Consumer Collection Practices Act (FCCPA) FLA STAT §559

(Part VI).  These laws prevent, respectively, debt collectors and persons from, *inter alia*,

engaging in abusive, deceptive, and unfair collection practices.

2.     Plaintiffs, Donna Mae Fredericks, an individual, brings this action for declaratory

judgment that the practices of Defendant violated the FDCPA and FCCPA and for an

award of statutory and actual damages for the acts of Defendants as more fully alleged

herein.

### II. JURISDICTION

3.     The jurisdiction of this Court arises under 15 U.S.C. §1692k(d) and 28 U.S.C.

§1337 Declaratory relief is available pursuant to 28 U.S.C. §§2201-2202.

4.     This is an action for damages which exceed $117,834.27.

5.     The Plaintiff's property (herein the "Property")is located at:


**1038-1040 NW 8 AVENUE, FT. LAUDERDALE, FL 33311.**


### III.  ALLEGATIONS AS TO PARTIES

6.     Plaintiff, Donna Mae Fredericks ("Fredericks" or "Plaintiff"), is *sui juris* and a

resident of Palm Beach County, Florida.  Plaintiff Fredericks is a "consumer" as said term

is defined under the FDCPA, 15 U.S.C. §1692a(3).

7.     Defendant, SHAPIRO, FISHMAN & GACHE, LLP ("SFG"), is a "debt collector"

as said term is defined under the FDCPA, 15 U.S.C. §1692a(6) and a Florida Law Office

that regularly collects on notes, doing business in Florida.

8.     SHAPIRO, FISHMAN & GACHE, LLP, ("SFG") is a corporation, authorized to

do business in Florida.  SHAPIRO, FISHMAN & GACHE, LLP is located at 2424

NORTH FEDERAL HIGHWAY, STE 360, BOCA RATON, FLORIDA 33431.

9.     Defendant, CITIMORTGAGE, INC. ("CITI"), is a "debt collector" as said term is

defined under the FDCPA, 15 U.S.C. §1692a(6) doing business in Florida that regularly

collects on notes, doing business in Palm Beach County, Florida.  CITIMORTGAGE,

INC. has asked that service of process be sent to their registered agent, C T

CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL

33324.

10.     Defendants are engaged in the collection of debts from consumers using the U.S. mail and telephone.  Defendant regularly attempted to collect consumer debts alleged to be due to another.

11.     Defendants are all "debt collector(s)" as said term is defined under the FDCPA, 15 U.S.C. §1692a(6).

12.     A defendant regularly uses the United U.S. Postal Service in the collection of consumer debt.

13.     Defendant regularly collects or attempts to collect debts for other parties. Defendant is a "debt collector" as that term is defined in the FDCPA.

14.     At all times material to the allegation of this Complaint, Defendant was acting as a debt collector with respect to the collection of Plaintiff's alleged debt.

15.     Plaintiff contends that Defendants have conspired and committed deceptive acts in order to wrongfully foreclose with total disregard for Federal and State laws.

16.     Plaintiff contends that Defendants have created and caused fraudulent documents to be filed into the public records of Seminole county and into the State Court giving the appearance that there is a legal foreclosure going while some or all of the Defendants continue to break the law.

17.     Plaintiff contends that this is common practice by some or all Defendants nationwide and that some or all Defendants are under investigation by the U.S. Department of Justice and the Attorneys General of both the United S s and Florida.

18.     Defendants acting within the scope of their employment are vicariously liable for the actions of their respective employers. *Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507 (9th Cir. 1994)*.

19.     The Office of the Comptroller of the Currency (OCC) and the Federal Reserve have conducted an Independent Foreclosure Review of 13 mortgage servicers. "The review found critical weaknesses in servicers' foreclosure governance processes, foreclosure document preparation processes, oversight and monitoring of third-party vendors, including foreclosure attorneys."

20.     In said report, CITIMORTGAGE, INC. was found to be conducting questionable and/or wrongful foreclosures.

21.     With respect to the "Congressional findings and declaration of purpose" portion of the FDCPA, The United S s Congress has declared at 15 U.S.C. § 1692:

> *(a) Abusive practices*
>
> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
>
> *(b) Inadequacy of laws*
>
> Existing laws and procedures for addressing these injuries are inadequate to protect consumers.

## INVESTIGATION BY THE DEPARTMENT OF JUSTICE

22.     With respect to the Federal Government, at least one of the Defendants has consented to the 49 State Attorney General $25 Billion Dollar Settlement (herein AG settlement). Due to investigation by the Department of Justice (DOJ) February 9, 2012, the DOJ found numerous acts of unfair practices by the nations largest banks in state court foreclosures.

23.     This is the largest federal-state civil settlement ever obtained and is the result of

extensive investigations by federal agencies, including the Department of Justice, HUD

and the HUD Office of the Inspector General (HUD-OIG), and state attorneys general

and s  banking regulators across the country.  The joint federal-state group entered into

the agreement with the nation's five largest mortgage servicers: Bank of America

Corporation, JPMorgan Chase & Co., Wells Fargo & Company, Citigroup Inc. and Ally

Financial Inc. (formerly GMAC).  These banks consented to judgment of $25 billion.

24.     The settlement is primarily created to commit $25 billion to resolve violations of

state and federal laws by said banks.  "These violations include servicers' use of "robo-

signed" affidavits in foreclosure proceedings; deceptive practices in the offering of loan

modifications; failures to offer non-foreclosure alternatives before foreclosing on

borrowers with federally insured mortgages; and filing improper documentation in

federal bankruptcy court."

25.     <u>The new servicing standards make foreclosure a last resort by requiring servicers</u>

<u>to evaluate homeowners for other loss mitigation options first.  In addition, banks will be</u>

<u>restricted from foreclosing while the homeowner is being considered for a loan</u>

<u>modification.</u>  The new standards also include procedures and timelines for reviewing

loan modification applications and give homeowners the right to appeal denials.

Servicers will also be required to create a single point of contact for borrowers seeking

information about their loans and maintain adequate staff to handle calls.

26.     Investigations were conducted by the U.S. Trustee Program of the Department of

Justice, HUD-OIG, HUD's FHA, s  attorneys general offices and s  banking regulators

from throughout the country, the U.S. Attorney's Office for the Eastern District of New

York, the U.S. Attorney's Office for the District of Colorado, the Justice Department's Civil Division, the U.S. Attorney's Office for the Western District of North Carolina, the U.S. Attorney's Office for the District of South Carolina, the U.S. Attorney's Office for the Southern District of New York, SIGTARP and FHFA-OIG. The Department of Treasury, the Federal Trade Commission, the Consumer Financial Protection Bureau, the Justice Department's Civil Rights Division, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Department of Veterans Affairs and the U.S. Department of Agriculture made critical contributions.

> **Department of Justice**
> Office of Public Affairs
> FOR IMMEDIATE RELEASE
> Thursday, February 9, 2012
> Federal Government and S  Attorneys General Reach $25 Billion
> Agreement with Five Largest Mortgage Servicers to Address Mortgage
> Loan Servicing and Foreclosure Abuses
> $25 Billion Agreement Provides Homeowner Relief & New Protections,
> Stops Abuses

## FACTUAL ALLEGATIONS

### A. Description of Consumer Debt

27.     On or about June 19, 2003, the Plaintiff executed and delivered to UNION FEDERAL BANK OF INDIANAPOLIS ("UNION-FED"), a promissory note ("Note") and a mortgage ("Mortgage") securing payment of the Note and Mortgage.

28.     Sometime thereafter, and without proper notification to the Plaintiff, the note was transferred.   One or more assignments were not timely received by the Plaintiff.

29.     Defendants sought to collect a debt from Plaintiff arising from an alleged debt incurred by Plaintiff for personal, family, or household purposes; more specifically, the debt at issue was allegedly incurred on a note and secured by a mortgage.  The latter is null and void and secures the former.

### B.  Debt Collection Activities of Defendant

### 1. Filing of Collection Lawsuit

30.     On or about October 12, 2010, the Defendant CITI filed a complaint to foreclose on the Plaintiff's property (Exhibit "A" original foreclosure complaint).

31.     Said complaint was deficient, deceptive and failed to establish standing and capacity to foreclose on the Plaintiff's property, therefore the Defendant's CITI complaint was dismissed.  A copy of the Order is attached (See Exhibit "B").

32.     Defendant CITI had sixty (60) days to file an Amended Complaint and failed to do so.

33.     More than one (1) year after said order and without filing an appeal, CITI filed for an extension of time to file an Amended Complaint.  A copy of the Motion for Extension of Time is attached as (Exhibit "C").

34.     On or about January 7, 2013, the State Court entered an Order denying CITI's Motion for Extension of Time to File Amended Complaint with Prejudice.  A copy of the Order is attached hereto and incorporated as Exhibit "D".

35.     It is unclear how the Defendants effectively endorsed the note and mortgage since the note and mortgage were actually made out to UNION FEDERAL BANK OF INDIANAPOLIS (see note Exhibit "E", see mortgage Exhibit "F").

36.     There is an allonge attached to the note stating "WITHOUT RECOURSE PAY

TO THE ORDER OF UNION FEDERAL BANK OF INDIANAPOLIS" and allegedly

endored by JPMORGAN CHASE BANK, AS TRUSTEE FOR

CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES,

INC. ASSET BACKED CERTIFICATES, SERIES 2003-AC4.  However there are no

assignments anywhere from said parties filed in the public record and said parties failed

to give constructive notice of assignment as required pursuant to paragraph 15, 20 and 22

of the mortgage.  Lawful assignments are conditions precedent to secure a holder in due

course's security interest.

37.     Despite the foregoing, the Defendants have filed a VERIFIED AMENDED

COMPLAINT TO FORECLOSE  MOTGAGE (See Exhibit "G").

38.     Clearly the acts of CITI and SFG are deceptive and unfair.

39.     In their State Foreclosure Complaint, they failed to divulge the identity of their

employer.  The Plaintiff still does not know who the holder of the Plaintiff's note is.

40.     The Note and Mortgage encumbered the residence of the Plaintiff.

41.     By including Debt Collection Notices in their Complaints, CITI attempted to

mislead the Plaintiff.  Their actions are a violation of a mortgage contract.  The debt is in

no way assumed valid, and the Plaintiff can dispute the validity at any time. At all times

relevant, CITI acted as representative for one or more holders in due course and

conspired with same in their collection action against the Plaintiff.  CITI attempted to

mislead the Plaintiffs by claiming to be the owner of a note where there is no contract

between the Plaintiff and CITI.  Their actions are a violation of a mortgage contract.  The

debt is in no way assumed valid, and the Plaintiff can dispute the validity at any time.

42.     By continuing the collection activity in violation of clearly established federal and state law, SHAPIRO, FISHMAN & GACHE, LLP continued in the unlawful collection of debt in violation of federal and state law.

43.     The Defendants conspired and through their deception, failed to give the Plaintiff proper notice of default and notice of acceleration from the Lender.

44.     A valid dunning letter was never received by the Plaintiffs.

45.     The   Mortgage Foreclosure Proceeding constitutes an attempt on the part of the Collection law Firm to collect a debt purportedly owed by the Promissory Note.

46.     The Collection Law Firm did not communicate with the Defendant concerning the debt represented by the Promissory Note prior to the filing of the Mortgage Foreclosure Preceding and could not legally engage in collection activity with the Plaintiff without first giving notice as required under U.S.C. §1692g.

47.     These acts were "willful" acts taken by the Defendants to deceive the Plaintiff.

### 2. Use of Non-Complaint Disclosure of FDCPA Validation Rights

48.     The Collection Law Firm attached as an exhibit to the Complaint in the Mortgage and Note Foreclosure Proceeding a document entitled "Notice Required by the Fair Debt Collection Practices Act" ("FDCPA Validation Notice").

49.     However, such notice is invalid because the filing of the foreclosure complaint does not and continue be considered an initial communication with the consumer.

50.     The FDCPA Validation Notice Failed to provide complete and accurate disclosures mandated by the FDCPA:

         (a) the amount of the debt as required under 15 U.S.C. §1692g(a)(1);

     (b) the name of the creditor to whom a debt was owed as required under 15 15

        U.S.C. §1692g(a)(2); and

     (c) the rights of consumers with respect to disputing consumer debts as

        require under 15 U.S.C. §1692g(a)(3) insofar as the Collection Law Firm

        required that the consumer dispute the debt in writing.

51.     The collection action was defective from the inception and the Defendants are engaged in the collection of a defective judgment.

52.     Any attempt by the Defendant to comply with federal mandatory requirement of a dunning letter is defective.  The Plaintiff is not received a valid dunning letter.

### 3. Post-Complaint Filings in the Mortgage and Note Foreclosure Proceeding

53.     Subsequent to service of the Complaint in the Mortgage and Note Foreclosure Proceeding, the Collection law Firm sent or caused to be sent the various motions and other papers which were filed in the Mortgage and Note Foreclosure Proceeding ("Post-Complaint Filings" and filings that were "Post Dismissal Filings").

54.     Further more, the Defendants did engage in deceptive practices by overshadowing federal law in requiring the Plaintiff to provide a response to the foreclosure complaint within 20 days, when federal law allows the Plaintiff 30 days to dispute the debt.

55.     There are clearly material misrepresentations in the collection of a debt.

56.     By virtue of the fact that the Plaintiff did not receive all timely assignments of mortgage from UNION FEDERAL BANK OF INDIANAPOLIS to CITI and to CITI's employer, the Defendants *could not and did not* possess the note and had no legal right to collect on the note from the inception; otherwise they would not have to deceive the Plaintiff.  The Defendants did not yield to conditions precedent to foreclose and were not

the property parties to sue, a fact supported that their foreclosure was dismissed twice, the legal limit in the state of Florida.

57.     Through information and belief, the Note was assigned to one of more parties without notice to the Plaintiff and it is unclear how or when the note was assigned from UNION FEDERAL BANK OF INDIANAPOLIS to CITI and CITI's employer.

58.     Requirements to the securitization process are four true sales pursuant to Internal Revenue Code (IRC) 860 (A-G).  There is no assignment from the United States Bankruptcy Court Trustee.  The Defendants therefore violated paragraph 15, 20 and 22 of the of mortgage which required proper notification to the Plaintiff. The Defendants failed to provide the intervening assignments from the original lender to CITI.  Again the Defendants have acted ultra virus and violation of clearly established federal and state law.

59.     The Defendants deceived the Plaintiff.  The Defendants failed to observe Florida Statutes §559.715 also requires a valid assignment within 30 days of the assignment of said mortgage.

60.     The Defendant SHAPIRO, FISHMAN & GACHE, LLP, knew or should have known the aforementioned facts and failed to make reasonably inquiry into same. Defendant SHAPIRO, FISHMAN & GACHE, LLP is liable for their acts in the continued deceptive practices of their client.


## PRACTICES OF DEFENDANT

61.     In the event the FDCPA Validation Notice is held to be the "initial communication" for purposes of 15 U.S.C. §1692g(a), it is or was the policy and practice

of Defendant to send notices in the form or substantially similar form to consumers in a

manner which was reasonably calculated to confuse or frustrate consumers with respect

to informing consumers as to:

    a.  the amount of the debt as required under 15 U.S.C. §1692g(a)(1);

    b.  the name of the creditor to whom a debt was owed as required under 15 U.S.C.

       §1692g(a)(2); and

    c.  the rights of consumers with respect to disputing consumer debts as required

       under 15 U.S.C. § 1692g(a)(3).

62.     In the even the FDCPA Validation Notice is not held to be the "initial

communication" for purposes of 15 U.S.C. § 1692g(a), it is or was the practice of

Department not to send consumers such as the  s a written notice as apart of its

communications to collect consumer debts with respect to informing consumers as to:

    a.  the amount of the debt as required under 15 U.S.C. § 1692g(a)(1);

    b.  the name of the creditor to whom a debt was owed as required under 15 U.S.C.

       §1692g(a)(2);

    c.  a statement that unless the consumer, within thirty days after receiving the notice,

       disputes the validity of the debt, or any portion thereof, the debt will be assumed

       to be valid by the debt collector as required under 15 U.S.C. §1692g(a)(3);

    d.  a statement that if the consumer notifies the debt collector in writing within the

       thirty day period, the debt, or any portion thereof, is disputed, the debt collector

       will obtain verification of the debt or a copy of the judgment against the consumer

       and a copy of such verification of judgment will be mailed to the consumer by the

       debt collector as required under 15 U.S.C. §1692g(a)(4); and

e.  a statement that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor as required under 15 U.S.C. §1692g(a)(5).

63.     By taking said actions, the Defendants conspired and took one or more actions not legally allowed to be taken.

## FAIR DEBT COLLECTIONS PRACTICES ACT CLAIM

64.     At all times material hereto, the Mortgage Loan Companies, including CITI and their employer, or its assigns, were "creditors" as said term is defined under 15 U.S.C. §1692a(4).

65.     At all times material hereto, the Mortgage Debts, including the obligation under the  Note, were a "debt" as said term is defined under 15 U.S.C. §1692a(5).

66.     At all times material hereto, the FDCPA Validation Notice was a "communication" as said term is defined under 15 U.S.C. §1692(a)(2).

67.     At all times material hereto, the Post-Complaint Filings were a "communication" as said term is defined under 15 U.S.C. §1692(a)(2).

68.     15 U.S.C. §1692g(a) provides, in pertinent part, the following:

Notice of Debts; Contents

Within five days after the initial communication from the consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer written notice containing:

(a) The amount of the debt;

(b) The name of the creditor to whom the debt is owed;

(c) A s ment that unless the consumer, within thirty days after reserving the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; and

(d) A s ment that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different form the current creditor.

69.     As described above, the conduct of Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et sequi,* by failure of Defendants to properly inform the consumer as to the consumer's rights to dispute a consumer debt in a manner which was not reasonably calculated to confuse or frustrate the least sophisticated consumer in violation of 15 U.S.C. §1692g(a)(3).

70.     As a result of Defendant's conduct, Plaintiff's are entitled to an award of statutory and actual damages pursuant to 15 U.S.C. §1692k.

71.     The Defendants are in violation of FDCPA, 15 U.S.C. §1692..  The Defendants engaged in "communication" in the collection of a "debt" as defined by § 1692a(5):

The term "communication" means any obligation or alleged obligation of a consumer to pay money arising out of a judgment.

72.     Defendants SHAPIRO, FISHMAN & GACHE, LLP and CITIMORTGAGE, INC. are debt collectors within the meaning of §559.55(6).

73.     Plaintiff seeks a declaration that Defendant's practices are in violation of the FCCPA and FDCPA;

74.     Plaintiff did violate the FCCPA and FDCPA.  Pursuant to Florida FCCPA,

violations of the FDCPA are to be given great wait in considering violations of FCCPA

to wit:

>   559.552(5)
>
>>   (5) In applying and construing this section, due consideration and great
>>   weight shall be given to the interpretations of the Federal Trade
>>   Commission and the federal courts relating to the federal Fair Debt
>>   Collection Practices Act.
>>
>>   559.78 Judicial enforcement.
>>
>>   --In addition to other penalties provided in this part, s  attorneys and their
>>   assistants are authorized to apply to the court of competent jurisdiction
>>   within their respective jurisdictions, upon the sworn affidavit of any
>>   person alleging a violation of any of the provisions of this part.  Such
>>   court shall have jurisdiction, upon hearing and for cause shown, to grant a
>>   temporary or permanent injunction restraining any person from violating
>>   any provision of this part, whether or not there exists an adequate remedy
>>   at law;  and such injunction, suspension, or revocation shall issue without
>>   bond.
>
>   559.785 Criminal penalty.
>
>>   --It shall be a misdemeanor of the first degree, punishable as provided in s.
>>   775.082 or s. 775.083, for any person not exempt from registering as
>>   provided in this part to engage in collecting consumer debts in this s
>>   without first registering with the office, or to register or attempt to register
>>   by means of fraud, misrepresentation, or concealment.

75.     The Plaintiff seeks an order by the court pursuant to permanent injunction

prohibiting Defendants and any other party from either contacting or otherwise collecting

the alleged debt from Plaintiff.

76.     Plaintiff seeks both injunctive relief and equitable relief in accordance with

Plaintiff's rights under both state and federal law.

77.     The FCCPA provides for equitable relief including injunctive relief. *Berg v.*

*Merchs. Ass'n Collection Div.*, 586 F. Supp. 2d 1336, 1345, (S.D. Fla. 2008).

78.     As a consequence of the acts of the defendants' Plaintiff are entitled to statutory

and actual relief for the acts of the Defendants.

79.     The FCCPA permits for the recovery of damages for emotional distress and is not

subject to the impact rule. *Florida Department of Corrections v. Abril*, 969 So. 2d 201

(Fla. 2007).

80.     Plaintiff seeks a permanent injunction prohibiting Defendants and any other party

from either contacting or otherwise collecting the alleged debt from Plaintiff.

81.     SHAPIRO, FISHMAN & GACHE, LLP and CITIMORTGAGE, INC. are debt

collectors within the meaning of the FDCPA, 15 U.S.C. §1692a(6).

82.     Defendants SHAPIRO, FISHMAN & GACHE, LLP and CITIMORTGAGE,

INC. violated the FDCPA. Defendants' violations include, but are not limited to, the

following:

   (a) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE,
       INC. violated 15 U.S.C. §1692d by engaging in conduct the natural
       consequence of which is to harass, oppress, or abuse any person.
   (b) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE,
       INC. violated 15 U.S.C. §1692e(2) by falsely representing the character,
       amount, or legal status of any debt.
   (c) Defendant COUNTRYWIDE SHAPIRO, FISHMAN & GACHE, LLP AND
       CITIMORTGAGE, INC. violated 15 U.S.C. §1692e(6) by sale or transfer of
       any interest in the debt will cause the consumer to lose any claim or defense to
       payment of the debt.
   (d) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE,
       INC. violated 15 U.S.C. §1692e(8) by communicating or threatening to
       communicate to any person credit information which is known or which
       should be known to be false, including the failure to communicate that a
       disputed debt is disputed.
   (e) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE,
       INC. violated 15 U.S.C. §1692e(10) by the use of any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(f) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. violated 15 U.S.C. §1692e(11) by the failure to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector.

(g) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. violated 15 U.S.C. §1692e(14) by the use of any name other than the true name of the debt collector's business.

(h) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. violated 15 U.S.C. §1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(i) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. violated 15 U.S.C. §1692f(6) taken or threatened to unlawfully repossess or disable the consumer's property.

(j) Defendant SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. violated 15 U.S.C. §1692g by, within five days after the initial communication with Plaintiff in connection with the collection of any debt, failing to send Plaintiff a written notice containing a s ment that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

WHEREFORE, Plaintiff demands judgment for damages against SHAPIRO,

FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. for actual or statutory

damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff Donna Mae Fredericks requests that this Court enter

judgment in her favor and against Defendants SHAPIRO, FISHMAN & GACHE, LLP

AND CITIMORTGAGE, INC. for:

a. Statutory and actual damages pursuant 15 U.S.C. §1692k;

b. Attorney's fees, litigant expenses and costs of the instant suit; and

c. Such other or further relief as the Court deems proper.

## COUNT II
## VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559(Part VI) BY DEFENDANTS SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC.

83.     Plaintiff alleges and incorporates the information in the Plaintiff's factual allegations.

84.     Plaintiff is a consumer within the meaning of §559.55(2).

85.     SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. are debt collectors within the meaning of §559.55(6).

86.     All Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

87.     The FCCPA provides for equitable relief including injunctive relief. *Berg v. Merchs. Ass'n Collection Div.*, 586 F. Supp. 2d 1336, 1345, (S.D. Fla. 2008).

88.     As a consequence of the acts of the defendants' Plaintiff are entitled to statutory and actual relief for the acts of the Defendants.

89.     The FCCPA permits for the recovery of damages for emotional distress and is not subject to the impact rule. *Florida Department of Corrections v. Abril*, 969 So. 2d 201 (Fla. 2007).

90.     Plaintiff seeks a permanent injunction prohibiting Defendants and any other party from either contacting or otherwise collecting the alleged debt from Plaintiff.

91.     All Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

92.    As a consequence of the acts of the defendants' Plaintiff DONNA HICKENBOTTOM lost her home.

**WHEREFORE**, Plaintiff demands judgment for damages against SHAPIRO, FISHMAN & GACHE, LLP AND CITIMORTGAGE, INC. for actual and statutory damages, punitive damages, attorney's fees and costs, pursuant to Fla. Stat. §559.77. Plaintiff respectfully request that this Court award damages, and any other just and appropriate relief under the law, including but not limited to, attorneys' fees and costs.

## VERIFICATION

Under penalty of perjury under the laws of the United States of America and the State of Florida, I declare that I have read the fore going, and that the facts alleged therein are true and correct to the best of my knowledge and belief. I understand that a false statement in this Verification will subject me to penalties of perjury.

Donna Mae Fredericks
Secured Party
10821 Morningstar Drive
Cooper City, Fl. 33026

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by COMMON LAW jury of all issues so triable as a matter of law.

Dated: May 28, 2014

Respectfully submitted,

Donna Mae Fredericks,
Secured Party
10821 Morningstar Drive
Cooper City, Florida 33026
(954) 294-8897

# EXHIBIT A

IN THE 17TH JUDICIAL CIRCUIT COURT
OF FLORIDA, IN AND FOR BROWARD COUNTY

CitiMortgage, Inc.

       Plaintiff,

-vs.-

Donna Hickenbottom; Equitymax, Inc.; City
National Bank of Florida; Unknown Tenants in
Possession #1 as to 1038; Unknown Tenants in
Possession #2 as to 1038; Unknown Tenants in
Possession #1 as to 1040; Unknown Tenants in
Possession #2 as to 1040; If living, and all
Unknown Parties claiming by, through, under
and against the above named Defendant(s) who
are not known to be dead or alive, whether said
Unknown Parties may claim an interest as
Spouse, Heirs, Devisees, Grantees, or Other
Claimants

       Defendant(s).

Case #:
Division #:

1041201



11

## VERIFIED COMPLAINT TO FORECLOSE MORTGAGE

Comes Now, Plaintiff, CitiMortgage, Inc. by and through the undersigned counsel and hereby

files its complaint and in support thereof states as follows:

## COUNT I
## MORTGAGE FORECLOSURE

1.      This is an action to foreclose a mortgage on real property located in Broward

County, Florida, and by reason thereof the venue of this matter is in Broward County, Florida.

2.      This court has jurisdiction of the subject matter pursuant to Florida Statute

26.012.

3.      On June 19, 2003, there was executed and delivered a Promissory Note and a

Mortgage securing payment of said Note to the payee named thereon. The Mortgage was

LP
#4464

recorded in Official Records Book ... ... ... ...

Florida, the property then owned by and in possession of mortgagor. A true and correct copy of said Note and Mortgage is attached hereto as Exhibit "A" and Exhibit "B".

4.       The Defendant, Donna Hickenbottom, executed the Mortgage.

5.       The Defendant, Donna Hickenbottom, is the maker of the subject Note.

6.       Plaintiff is the current owner of or has the right to enforce the Note and Mortgage.

7.       The Mortgage of the Plaintiff is a lien superior in dignity to any prior or subsequent right, title, claim, lien or interest arising out of mortgagee or the mortgagee's predecessors in interest.

8.       The Defendant, Donna Hickenbottom, is the current owner of the real property.

9.       All conditions precedent to the acceleration of the Note and Mortgage and/or the filing of the instant foreclosure complaint have been fulfilled.

10.      There has been a default in the payment of the amounts due under the subject Note and Mortgage in that the payment due for June 1, 2010 and all subsequent payments have not been made. Plaintiff declares the full amount payable under said Note and Mortgage to be due and payable.

11.      The Defendant who may be held personally liable for a deficiency, if any, is the Notemaker Donna Hickenbottom, unless any of such Defendant have been discharged in Bankruptcy in which event no deficiency is or will be sought.

12.      There is now due and owing the principal sum of $117,834.27 together with interest accruing thereon, together with all sums that may be due for taxes, insurance, escrow advances, and expenses and costs of suit including but not limited to filing fees, recording fees,

allowed by the Court.

13.      Plaintiff is obligated to pay Plaintiff's attorney a reasonable fee for their services and seeks an award of attorney's fees.

14.      That the Defendant, Equitymax, Inc., might have some claim or demand in the subject property by virtue of an Assignment of Mortgage, filed in Official Records Book 30802, Page 881, and by virtue of a Mortgage in the amount of $78,000.00, dated on February 18, 2000 filed in Official Records Book 30325, Page 681, of the Public Records of Broward County, Florida, based on information and belief that same is not a valid bona fide first position mortgage lien, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

15.      That the Defendant, City National Bank of Florida, might have some claim or demand in the subject property by virtue of an Assignment of Mortgage, filed in Official Records Book 30802, Page 881, and by virtue of a Mortgage in the amount of $78,000.00, dated on February 18, 2000 filed in Official Records Book 30325, Page 681, of the Public Records of Broward County, Florida, based on information and belief that same is not a valid bona fide first position mortgage lien, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

16.      That the Defendants, UNKNOWN TENANTS IN POSSESSION #1; UNKNOWN TENANTS IN POSSESSION #2, might have some claim or demand in the subject

real property by virtue of possession, whether by actual possession or through constructive possession only.

**WHEREFORE,** the Plaintiff respectfully requests that the Court ascertain the amount due Plaintiff pursuant to said Note and Mortgage, together with late charges, escrow advances, taxes, and expenses and costs of this suit, including reasonable attorney's fees, that if the sums found to be due Plaintiff are not immediately paid, the Court enter a Judgment of Foreclosure pursuant to Count I of the Complaint ordering the Clerk of the Court to sell the subject property to satisfy Plaintiff's Mortgage in whole or in part, and that the right, title and interest of any defendant, or any party claiming by, through, under or against any defendant named herein or hereinafter made a defendant be deemed inferior and subordinate to the Plaintiff's Mortgage lien and be forever barred and foreclosed, and the court retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including issuance of a writ of possession and the entry of a deficiency, when and if such deficiency is sought if the parties liable under the note have not been discharged in Bankruptcy, and for such other and further relief as to the Court may seem just and proper.

By: _____
Jennifer Mancebo, Esq.
FL Bar # 63981
SHAPIRO & FISHMAN, LLP
Attorneys for Plaintiff
2424 North Federal Highway
Suite 360
Boca Raton, Florida 33431
Telephone: (561) 998-6700
Fax: (561) 998-6707

This is an attempt to collect a debt and any information obtained will be used for that purpose.

11-196994

# EXHIBIT B

1038

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR BROWARD COUNTY

CitiMortgage, Inc.

                Plaintiff,

      -vs.-

Donna Hickenbottom; et al

             Defendant(s).

Case #: 2010 CA 041201 (11/SJ)
Division #: 11/SJ

## ORDER UPON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE having come to be heard on DEFENDANT'S MOTION TO

DISMISS and the Court having heard argument of counsel, or being otherwise advised in

the premises, it is hereupon,

    ORDERED AND ADJUDGED:

1.    That said Motion is Granted/Denied.

2.    *Motion is granted as to verification of complaint. Motion is denied as to all other grounds. Plaintiff has 60 days to Amend*

DONE AND ORDERED in Chambers at FT. LAUDERDALE, Broward County,

Florida this ____ day of _____, 2011.

TRUE COPY

SEP 1 9 2011

_____
HONORABLE CIRCUIT COURT JUDGE

MARINA GARCIA-WOOD

# EXHIBIT C

*1038*

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT\
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION

CitiMortgage, Inc.

        Plaintiff,

-vs.-

Donna Hickenbottom; et al.

        Defendant(s).

Case #: 2010 CA 041201 (11/SJ)
DIVISION: 11

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT

COMES NOW, the Plaintiff, CitiMortgage, Inc., by and through its undersigned attorney, and hereby files this, its Motion for Extension of Time and sets forth as follows:

1.    On or about September 19, 2011, Plaintiff received this Court's Order granting Defendant's Motion to Dismiss to Amend Complaint, thereby ordering that the Complaint be amended within sixty (60) days of the date of this Order.

2.    This office has made diligent efforts to amend the Complaint within the constraints of this Court's Order; however, additional time beyond the amount allotted in the Court's Order is needed.

3.    Therefore, Plaintiff respectfully requests additional time within which to comply with this Court's Order.

4.    That this Motion is interposed in good faith and not for the purposes of delaying the prosecution of this matter.

5.    No parties will be prejudiced by the granting of this Motion.

WHEREFORE, Plaintiff respectfully requests this Honorable Court allow additional time in which to comply with the Court's Order granting Defendant's Motion to Dismiss to Amend Complaint.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by U.S. Mail and email service if an email address is so listed below on this 15 day of _____Oct_____, 2012 to the following:

Donna Hickenbottom, 10821 Morningstar Drive, Hollywood, FL 33026

Unknown Tenants in Possession #1 n/k/a Earlene Daniels as to 1038, 1038 Northwest 8th Avenue, Fort Lauderdale, FL 33311

Unknown Tenants in Possession #1 n/k/a Tandra Johnson as to 1040, 1040 Northwest 8th Avenue, Fort Lauderdale, FL 33311

**\*Pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A), Plaintiff's counsel hereby designates its primary email address for the purposes of email service as: SFGBocaService@logs.com\***

SHAPIRO, FISHMAN & GACHÉ, LLP
Attorneys for Plaintiff
2424 North Federal Highway, Ste 360
Boca Raton, Florida 33431
Telephone: (561) 998-6700
Fax: (561) 998-6707
Email: maweissberg@logs.com

By _____
Matthew Weissberg, Esq.
FL Bar # 71119

"THIS COMMUNICATION, FROM A DEBT COLLECTOR, IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

10-196994 FC01 CMI

# EXHIBIT D

IN THE CIRCUIT COURT OF THE SEVENTEENTH
JUDICIAL CIRCUIT, IN AND FOR BROWARD
COUNTY, FLORIDA

CASE NO.: _2010 CA 01121_

_Chastine_                    )
                             )
              Plaintiff,      )
                             )
vs.                          )            **ORDER**
                             )
                             )
_Hickelston_   Defendant.    )
                             )

THIS CAUSE was considered by the Court on the following Motion(s) _Plaintiff Mtn_
_for Extension of Time to file Amended Complaint_

HEARING was held on _1/7/13_

THE COURT having considered the grounds for the Motion, taken testimony, heard argument and considered the

applicable law, it is FOUND,

ORDERED AND ADJUDGED as follows:

_Motion denied with prejudice_

DONE AND ORDERED _1/7/13_

_William W. Haury_
William W. Haury  CIRCUIT JUDGE

JAN 07
A TRUE C...

Copies furnished:   ☐ In Open Court
                    ☐ By Mail

BC 118 (Rev 7/11)

# EXHIBIT E



# NOTE



Hickenbottom

June 19, 2003                    Boca Raton                         FL
[Date]                              [City]                          [State]


1038-1040 NW 8 Avenue, Ft. Lauderdale, FL 33311
[Property Address]


## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 131,000.00     (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is

Union Federal Bank of Indianapolis
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of   6.375   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st     day of each month beginning on August, 2003          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on July 1, 2033          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at Waterfield Mortgage Company, Incorporated
7500 West Jefferson Blvd. Fort Wayne, IN 46804   or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $     817.27     .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



-5N(FL) (0005)            Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                    Initials: _____

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower:

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
                                 -Borrower

_____ (Seal)
Donna Hickenbottom       -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*



WITHOUT RECOURSE
PAY TO THE ORDER OF

JPMorgan Chase Bank, as Trustee for certificateholders
of Bear Stearns Asset Backed Securities, Inc.
Asset Backed Certificates, Series 2003-AC4

UNION FEDERAL BANK OF INDIANAPOLIS

Katherine M. Gushwa, Supervisor

# EXHIBIT F

OR BK 35470   Page 1734, Page 1 of 20, Recorded 06/26/2003 at
08:52 AM, Broward County Commission, Doc M:  $458.50 Int. Tax $262.00 Deputy
Clerk 1924

Rturn To: Attn: Post Prod/Loan Delivery Dept 441
Union Federal Bank of Indianapolis
7524 West Jefferson Boulevard
Fort Wayne, IN 46800

This document was prepared by: Core Reprints Group
Federal Bank of Indianapolis
7508 W. Jefferson Blvd.
Fort Wayne, IN 46804

———————————[Space Above This Line For Recording Data]———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 19th, 2003
together with all Riders to this document.
(B) "Borrower" is Donna Rickenbacker, a single person

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Union Federal Bank of Indianapolis

Lender is a Federal Savings Bank
organized and existing under the laws of the United States

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 1 of 16        Initials: DR

VMP MORTGAGE FORMS -  (800)521-7291

(20)

Lender's address is 7600 W. Jefferson Boulevard, Fort Wayne, IN 46804

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated June 19th, 2003
The Note states that Borrower owes Lender One Hundred Thirty One Thousand and 00/100
Dollars
(U.S. $  131,000.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1st, 2033
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☒ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider       ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials [signature]

Page 2 of 16                                               Form 3010  1/01

Case 0:14-cv-61247-JIC Document 1 Entered on FLSD Docket 05/29/2014 Page 41 of 63

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the RECORDER [Type of Recording Jurisdiction] of Broward County [Name of Recording Jurisdiction]:

LOT 43 AND 44, BLOCK 135, OF PROGRESSO, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 2, PAGE 16, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, SAID LANDS LYING AND BEING IN BROWARD COUNTY FLORIDA.

Parcel ID Number: 1339-10-46-024 8 Avenue
Ft. Lauderdale
("Property Address"):

which currently has the address of [Street]

[City], Florida 33311 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials: AH

Page 3 of 14

Form 3010 1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Page 5 of 16                    Initials _____        Form 3010   1/01

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Page 5 of 16          Initials _____          Form 3010   1/01

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Page 6 of 16                 Initials _____                 Form 3010   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Page 7 of 16                                                                         Initials _____   Form 3010  1/01

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Form 3010  1/01

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

Initials Page 10 of 16 Form 3010 1/01

Case 0:14-cv-61247-JIC Document 1 Entered on FLSD Docket 05/29/2014 Page 50 of 63

06/21/2010 MON 10:15 FAX 014/026
OR BK 38470 PG 1744, Page 11 of 20.

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

-6FL) (0010) Page 11 of 15 Initials ___ Form 3010 1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Page 12 of 20 Form 3010 1/01

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Page 13 of 16                                                                 Form 3010  1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
                                    Donna Hickenbottom        -Borrower

                                    10021 Morningstar Dr
                                    Cooper City, FL 33026
                                                              (Address)

_____          _____ (Seal)
                                                              -Borrower


                                                              (Address)

_____ (Seal)             _____ (Seal)
                -Borrower                                     -Borrower


                (Address)                                     (Address)

_____ (Seal)             _____ (Seal)
                -Borrower                                     -Borrower


                (Address)                                     (Address)

_____ (Seal)             _____ (Seal)
                -Borrower                                     -Borrower


                (Address)                                     (Address)

STATE OF FLORIDA, Broward                    County of 2177436

The foregoing instrument was acknowledged before me this June 19th, 2003          by
Donna Hickenbottom, A single  woman

who is personally known to me or who has produced                        as identification

_Tammy L Browning_
Notary Public

OFFICIAL NOTARY SEAL
TAMI L BROWNING
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. DD069227
MY COMMISSION EXP. APR. 1,2006

Page 16 of 16                    _A4_              Form 3010  3/99

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 19th     day of June, 2003
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to

Union Federal Bank of Indianapolis
                                                                           (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

1038-1040 NW 8 Avenue, Ft Lauderdale, FL 33311

*[Property Address]*

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument          Initials: 
Page 1 of 4                                                         FORM 3170 3/99
ⓐ-57R (9912)                        VMP MORTGAGE FORMS - (800)521-7291

06/21/2010  MON 10:18   FAX                                                                    021/026
             OR BK  35470  PG  1751,  Page  19 of 20

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

MULTISTATE 1-4 FAMILY RIDER &mdash; b8d7a08bb9a6be3e    Page 2 of 4                    Initials: _____    FORM 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)      *Donna Hickenbottom* (Seal)
              -Borrower       DONNA Hickenbottom      -Borrower

_____ (Seal)      _____ (Seal)
              -Borrower                       -Borrower

_____ (Seal)      _____ (Seal)
              -Borrower                       -Borrower

_____ (Seal)      _____ (Seal)
              -Borrower                       -Borrower

# EXHIBIT G

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION

| | |
|---|---|
| CitiMortgage, Inc. | |
| **Plaintiff,** | Case #: 2010 CA 041201 |
| -vs.- | DIVISION: 11 |
| Donna Hickenbottom; Unknown Parties in Possession #1 as to 1038; Unknown Parties in Possession #1 as to 1040 Defendant(s). | |

## VERIFIED AMENDED COMPLAINT TO FORECLOSE MORTGAGE

Plaintiff, **CitiMortgage, Inc.** sues the Defendants and states:

1.   This is an action to foreclose a mortgage on real property located in Broward County, Florida, and by reason thereof the venue for this matter is in Broward County, Florida.

2.   Borrower(s) Donna Hickenbottom executed and delivered a Promissory Note ("Note") dated June 19, 2003 and Donna Hickenbottom executed a Mortgage ("Mortgage") dated June 19, 2003 securing payment of the Note to the payee named thereon.  The Mortgage was recorded in Official Records Book 35470, Page 1734, of the Public Records of Broward County, Florida, and mortgaged the property described in the mortgage then owned by and in possession of the mortgagor(s).  True and correct copies of said Note and Mortgage, are attached hereto as Exhibit "A" and Exhibit "B" respectively.

3.   Plaintiff is entitled to enforce the Note as a non-holder in possession and to foreclose the Mortgage securing the Note.

4.   The Mortgage of the Plaintiff is a lien superior in dignity to any prior or subsequent right, title, claim, lien or interest arising out of mortgagee or the mortgagee's predecessors in interest.

5.   The Defendant, Donna Hickenbottom, is the current owner of the real property which is the subject of the Mortgage.

6.   All conditions precedent to the acceleration of the Note and Mortgage and the filing of the instant foreclosure complaint have been fulfilled.

7.   There has been a default in the payment of the amounts due under the Note and Mortgage in that the payment due for June 1, 2010 and all subsequent payments have not been made.

8.   Plaintiff declares the full amount payable under the Note and Mortgage to be due and payable.

9.   Defendant who may be held personally liable for a deficiency, if any, is the notemaker, Donna Hickenbottom, unless any of such Defendant have been discharged in bankruptcy in which event no deficiency is or will be sought.

10.  There is now due and owing the principal sum of $117,834.27, together with all sums that may be due for taxes, insurance, escrow advances, and expenses and costs of suit including but not limited to filing fees, recording fees, title search and examination fees, fees due for service of process and such other costs as may be allowed by the court.

11.  Plaintiff is obligated to pay Plaintiff's attorney a reasonable fee for their services and seeks an award of attorney's fees.

12.  That the Defendant, Unknown Tenants in Possession #1 as to 1038 n/k/a Earlene Daniels, might have some claim or demand in the subject property by virtue of possession, whether by tenancy from the record title holder or mere possession only, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property.  The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

13. That the Defendant, Unknown Tenants in Possession #1 as to 1040 n/k/a Tandra Johnson, might have some claim or demand in the subject property by virtue of possession, whether by tenancy from the record title holder or mere possession only, and all other rights, claims, liens, interest, encumbrances and equities, either recorded or unrecorded, if any in the subject real property. The above-described interest of said Defendant(s) in the subject property is inferior to the interest of the Plaintiff in said property.

**WHEREFORE**, the Plaintiff respectfully requests that the court enter a Final Judgment: (a) enumerating all amounts the court determines due to Plaintiff pursuant to said Note and Mortgage, (b) ordering the Clerk of the Court to sell the subject property to satisfy the amount due Plaintiff, in whole or in part; (c) adjudging that the right, title and interest of any party claiming by, through, under or against any Defendant named herein be deemed inferior and subordinate to the Plaintiff's Mortgage lien and be forever barred and foreclosed; (d) retaining jurisdiction of the court in this action to make any and all further orders and judgments as may be necessary and proper, including issuance of a writ of possession and the entry of a deficiency, when and if such deficiency is sought if the parties liable under the Note have not been discharged in bankruptcy (however no deficiency will be sought if the parties liable under the Note were subject to an order allowing Plaintiff or its predecessors-in-interest only in rem relief

(This space left blank intentionally)

from the bankruptcy automatic stay); and, (e) for such other and further relief as the court may

deem just and proper.

### FLA. R. CIV. P. 1.110(b) VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Amended Complaint to Foreclose
Mortgage, and the facts alleged therein are true and correct to the best of my knowledge and belief.

By: _____

Printed Name: Kellie Williams

Title: Vice President-Document Control

Plaintiff: CitiMortgage, Inc.

Date: _____6-3-13_____

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing VERIFIED

AMENDED COMPLAINT has been furnished by U.S. Mail and email service if an email

address is so listed below to:

Donna Hickenbottom, 10821 Morningstar Drive, Hollywood, FL 33026

Unknown Tenants in Possession #1 as to 1038 n/k/a Earlene Daniels, 1038 Northwest 8th
Avenue, Fort Lauderdale, FL 33311

Unknown Tenants in Possession #1 as to 1040 n/k/a Tandra Johnson, 1040 Northwest 8th
Avenue, Fort Lauderdale, FL 33311

this _____ day of _____ , 2013.

**\*Pursuant to Fla. R. Jud. Admin. 2.516(b)(1)(A), Plaintiff's counsel hereby
designates its primary email address for the purposes of email service as:
SFGBocaService@logs.com\***

SHAPIRO, FISHMAN & GACHÉ, LLP
Attorneys for Plaintiff
2424 North Federal Highway, Ste 360
Boca Raton, Florida 33431
Telephone: (561) 998-6700
Fax: (561) 998-6707
Email: maweissberg@logs.com
By: _____
Matthew Weissberg, Esq.
FL Bar # 71119

Pursuant to the Fair Debt Collections Practices Act, you are advised that this office may be
deemed a debt collector and any information obtained may be used for that purpose.
10-196994 FC01 CMI